Filed 8/27/13  P. v. Cheng CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>HAU HONG CHENG,<br><br>        Defendant and Appellant. | B244588<br><br>(Los Angeles County<br>Super. Ct. No. GA084187) |

        APPEAL from a judgment of the Superior Court of Los Angeles County. Michael Villalobos, Judge.  Affirmed.


        Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.


        No appearance for Plaintiff and Respondent.

_____

Defendant Hau Hong Cheng appeals from his convictions of battery upon a custodial officer and misdemeanor simple battery. Following our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441 (*Wende*), we affirm.

**FACTS**

A. *The People's Case*

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358), the evidence established that at 10:30 a.m. on August 26, 2011, Justine Lun was shopping at a Dollar Tree store in Pasadena when defendant, a stranger to Lun, bumped into her and blew cigarette smoke into her face. Lun moved to a different aisle and continued shopping. Moments later, defendant said something in Chinese as he forcefully grabbed Lun's left wrist and tried to pull her towards him, causing Lun to lose her balance, although she did not fall and was able to pull away. She did not report the incident to anyone, but as she was leaving the store Lun encountered her cousin, Joseph Mar, and told him about it. Mar called 911. Lun recounted the incident to the police and then left. A few minutes later, the police asked her to go to a nearby location where she saw defendant sitting on the curb surrounded by police officers. Lun identified defendant as the person who had accosted her in the Dollar Tree store.

Mar did not know that his cousin Lun was shopping in the store while he and his co-worker, Anthony Quan, were on a break sitting in front of the store. When Mar noticed defendant enter the store smoking a cigarette, he told Quan to go in and see if defendant was still smoking. Mar saw defendant leave the store about five minutes later. After learning what had happened to his cousin, Mar went outside to confront defendant. Mar exchanged words with defendant in Cantonese and followed him as he walked around the parking lot, into a restaurant and then out again. When defendant got into a car, Mar noted the license plate number and called 911.

Police stopped defendant about half a mile from the Dollar Tree store. One officer characterized defendant as sweaty, agitated and not cooperative – although he speculated this may have been because defendant did not understand the commands being given to him in English. Officer Jack Ng was the Cantonese interpreter dispatched to the scene. Defendant told Ng that he saw a girl he liked so he went over to her and grabbed her hand.

Defendant was transported to the jail at the Alhambra Police Department. Custody Officers Juan Carranza and Mollie Zorilla were the jailers on duty that night. When Carranza arrived for his shift at about 9:00 p.m., defendant was alone in a cell banging on the doors and windows with his fists and head, screaming in English, "Let me call my wife." Later that night, defendant called Carranza over. Carranza was about 10 feet from defendant's cell when defendant made a "sexual gesture" towards Zorilla and said in English, "How much?" Carranza walked away without responding. At around 10:20 p.m., Carranza filled out the paperwork for defendant's release from custody. While Zorilla remained at the control desk, Carranza went to defendant's cell and elicited defendant's promise to be cooperative. Carranza opened the cell door and in English directed defendant to go to the control desk where Zorilla would give him further instructions. At the control desk, defendant was signing the requisite paperwork when Carranza saw him try to hug Zorilla. Seizing the back of defendant's shirt, Carranza pulled him away and ordered him to put his hands behind his back. Defendant did not comply and resisted Carranza's efforts to handcuff him. During the ensuing struggle, Carranza pushed defendant onto the ground; defendant reached back and grabbed Carranza's neck. Carranza put defendant into a choke hold and maintained it as defendant rolled over on top of him. When Carranza grabbed defendant's right hand, defendant bit Carranza's index finger, puncturing the skin through the tactical gloves Carranza was wearing. Defendant kept biting until three other officers intervened. A video of the incident taken by surveillance cameras was played for the jury.

Zorilla recalled defendant sitting on the floor of his cell pointing at Zorilla and using a sexual "thrusting motion with his arms." She also recalled defendant asking in

3

broken English to call his wife.  Later that night, while defendant was at the control desk signing the paperwork for his release, he suddenly lunged over the counter.  Zorilla feared for her safety.

B.    *The Defense Case*

Defendant testified that he was born in China but left when he was 17 years old. He speaks the Fuzhou and Mandarin dialects.  He does not speak English, although he learned a little as a child in school.  The morning of August 26, 2011, defendant did not feel normal, so he decided to return to China where he believed the people in his home town would take care of him.  Defendant felt like he was in a dream when he entered the Dollar Tree store and walked around.  He lit a cigarette hoping someone would tell him not to smoke, but no one did.  He recalled touching someone, but when she looked very scared, he immediately took his hand away and apologized, then left the store.  Defendant recalled speaking Cantonese to a police officer, then being arrested and being in jail that same day.  Defendant banged on the wall of his cell with his fists and head five or six times.  Although he had already called his girlfriend once, defendant asked the guard to let him call his "wife" because he could not remember the English word for "girlfriend." Defendant recalled being released from jail later that day, but did not recall trying to hug the female guard or getting into an altercation with the male guard.  Defendant still felt like he was in a dream and did not recall going home.  The next thing defendant recalled was waking up in a hospital.  Defendant watched the video of the incident and recognized himself, but could not recall it happening.

**PROCEDURAL HISTORY**

Defendant was charged by information with battery upon a custodial officer (Pen. Code, § 243.1) and misdemeanor simple battery (Pen. Code, §§ 242, 243, subd. (a)).  A jury found defendant guilty as charged.  Dr. Michael Yoo, the psychiatrist whose testimony was excluded at trial, testified at defendant's sentencing hearing that, defendant had been psychotic and delusional for a few weeks before the incident on

4

August 26. He was hospitalized from September 3 through 23 in a county psychiatric hospital where he was eventually diagnosed with a "brief psychotic disorder," defined as having symptoms which resolve within one month (defendant's symptoms improved with medication in a few weeks). In Yoo's opinion, defendant was psychotic at the time of the incident. The trial court suspended imposition of sentence on both counts and ordered defendant placed on formal probation for three years. Defendant timely appealed.

We appointed counsel to represent the defendant on appeal. After examination of the record, appointed counsel filed an opening brief which contained an acknowledgment that she had been unable to find any arguable issues and requested that we independently review the record pursuant to *Wende, supra*, 25 Cal.3d 436. On May 17, 2013, we advised defendant that he had 30 days within which to personally submit any contentions or issues which he wished us to consider. Defendant did not file anything.

We have examined the entire record and are satisfied that appointed counsel has fully complied with her responsibilities and that no arguable issues exist. (*Wende, supra*, 25 Cal.3d at p. 441.)

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:



BIGELOW, P. J.



FLIER, J.

5